CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 27 2017

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **FENTON L. TERRY,** | ) | **CASE NO. 7:16CV00049** |
| Petitioner, | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **LESLIE FLEMING,** | ) | **By: Hon. Michael F. Urbanski** |
| Respondent. | ) | **United States District Judge** |

Fenton L. Terry, a Virginia inmate proceeding pro se, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement on a judgment by the Circuit Court of the City of Danville. Respondent filed a motion to dismiss Terry's § 2254 petition, and Terry responded, making the matter ripe for disposition. After review of the record, the court concludes that none of Terry's claims have merit, requiring the motion to dismiss to be granted.

## I.

Terry was convicted of first-degree murder of Kendra Stokes and two related firearms violations in the Circuit Court of the City of Danville. Following an unsuccessful appeal and habeas petition in state court, he now challenges his conviction in federal court. The facts and procedural history pertinent to Terry's convictions are as follows.

On the night of April 6, 2011, Terry made several calls to his uncle, Charlie Wilson, and his friend, Mellissa Price, looking to purchase a significant amount of marijuana.[1] After Wilson and Price informed Terry that they had no marijuana to sell, Terry called Kendra Stokes shortly past 10 P.M. A cell phone expert later determined that Terry's last call to his uncle used a cell tower close to Terry's home in Ringgold, Virginia, but that Terry's call to Stokes had switched

---

[1] Additionally, Terry's acquaintance, Christopher Hayes, contacted Terry around 7 P.M. to purchase an ounce of marijuana. Terry offered Hayes $100 per ounce, but Hayes turned him down.

towers to one closer to the Edgewood Exxon Mart and the location where Stokes' body was found. Meanwhile, Stokes had contacted Linwood Hairston to assist in selling fake marijuana. Hairston agreed, and proceeded to buy rabbit food that the two used to imitate a pound of marijuana.

Hairston planned to meet Stokes and the buyer (Terry) at the Exxon; Hairston would get $600 out of the $800 asking price, and Stokes would retain $200. Hairston pulled into the Exxon parking lot, and Stokes stepped out of the passenger seat of a white Mazda 626. Hairston gave Stokes the fake marijuana in a plastic grocery bag, and Stokes handed Hairston $600. Hairston watched her return to the passenger seat of the Mazda at approximately 10:15 P.M.[2]

The Mazda then turned left onto Edgewood Rd, in the direction of the Danville Expressway. The driving time from the Exxon to the location of the victim's body is five minutes. At trial, the cell phone expert testified that Terry placed phone calls at 10:28 and 10:29 P.M., near the estimated time of the murder, and that cell phone location data from those calls indicated Terry was near the murder scene at that time. That same night, at approximately 10:30 P.M., Danville Officer William Merrill was at his residence when he heard eight to ten rapid gunshots from the area of Corning Drive.

At 7:30 A.M. on April 7, 2011, a passerby discovered the body of Stokes in a ditch beside the Corning Drive exit ramp on the Danville Expressway. Soon after, Danville Police secured the scene, and Danville fireman Steven Ferrell arrived and observed the body; he noticed bullet wounds and confirmed that Stokes was deceased. Further, rigor mortis had set in, indicating that the homicide had occurred several hours earlier. Officer Charles Willard photographed the scene and collected all evidence, which included nine .40 caliber cartridge

---

[2] Hairston, during a review of the Exxon's surveillance footage, later identified the white Mazda 626 arriving at 10:15, his vehicle arriving at 10:18, and Stokes returning to the Mazda and leaving.

2

casings and a blue plastic grocery bag containing green leafy material. Later expert testimony opined that all bullets were fired from a single .40 caliber weapon, and that they were consistent with being fired from a Taurus pistol.

On April 8, 2011, Detective Bonnie Oakes went to 1600 Kentuck Church Road to speak with Terry about Stokes' death. Oakes observed a white Mazda 626 in front of the house, and that the back seats had recently been cleaned, but that the front seats remained dirty. Terry agreed to speak with officers at the police station. Kathy Corker, Terry's ex-girlfriend, drove Terry to the station in the Mazda, and Oakes obtained a search warrant for the vehicle.[3] While Terry and Corker were at the police station, Lt. Scott Eanes searched the car. Lt. Eanes noticed a strong odor of cleaning products; the back seats and rear floorboards were soaking wet. He collected a swab from a red stain on the roof of the vehicle that trailed from behind the passenger's seat toward the rear window.

Detective Clarence Goins' interview with Terry was recorded and played for the jury. At first, Terry admitted that he had spoken with Stokes about obtaining marijuana. However, Terry quickly modified his story, stating that Toby Dowdy was the purchaser. Terry then stated that neither he nor Dowdy had any further contact with Stokes. Detectives began questioning Terry regarding Stokes' phone records, and the fact that Terry's phone's geolocation data revealed a close proximity to the murder scene, around the time of the murder. Terry, when confronted with his phone's location data, stated that Dowdy had borrowed his phone. When confronted with the Exxon surveillance footage, Terry stated that Dowdy had taken the white Mazda 626.

---

[3] Corker owned and was the primary user of the white Mazda 626. Terry had no means to transport himself, but had use of various cars and had people who would drive him. He stated that borrowing Corker's Mazda was his "last resort" if he needed a ride, although he had borrowed the car in the past. Also, Terry left several school materials in the trunk, as he often carpooled with Corker to attend classes at Danville Community College. Terry did not have a copy of the Mazda's keys for himself, and when questioned by police, he could not articulate how frequently he had borrowed the car.

3

Later that day, Detective David Whitley interviewed Terry. Terry admitted that Dowdy was not involved, but claimed that Christopher Hayes had borrowed the car and phone at 9:50 P.M. Terry stated that Hayes returned the vehicle and phone around midnight, with Dwayne Pruitt, Jr. as a passenger. Detective Whitley noticed Terry texting upon entering the interview room, and police later obtained the messages. Terry's texts instructed Corker on what to tell police, and told her to leave with the Mazda before police could search it.

At trial, Hayes testified that he had remained at his girlfriend's house on 602 Elizabeth St for the entire night of April 6, 2011. He did text Terry around 7 or 8 P.M. for an ounce of marijuana, but Terry's price was too high. Several others corroborated Hayes' testimony.[4] During police questioning, Hayes denied knowing Terry, denied borrowing a vehicle and/or cell phone from Terry, and denied killing Stokes.

On April 11, 2011, Lt. Eanes executed a second search warrant for the white Mazda 626, noticed a red stain on the floorboard, and obtained an additional swab. Forensic expert Tim McClure developed a DNA profile of Stokes, as well as profiles of the April 8 and April 11 swabs. The two swabs matched Stokes' profile at each genetic marker. McClure testified that an unrelated person having those DNA characteristics was at least as unlikely as one in six-and-a-half billion.

On April 14, 2011, Detective Whitley executed a search warrant of Terry's home. Officers discovered a steam cleaner, scales with green plant material, baggies with green plant material, a Taurus gun bag, and a firearm cleaning kit. Detective Epps later testified that the gun cleaning equipment was proper for a .40 caliber weapon. The green plant material in the baggies

---

[4] Testimony established that Hayes was with his girlfriend, as well as David Dabbs, James Smith, and Dwayne Pruitt, Jr.

4

tested negatively for marijuana. The steam cleaner was sent to the forensic lab, where technicians found the presence of blood, but could not create a DNA profile.

Marcus Patterson, Terry's distant relative by marriage, was an inmate along with Terry on November 29, 2011. Patterson asked Terry if he had killed the girl. Terry responded several times with "I fucked up, cuz." Patterson testified against Terry because he was friends with Stokes' husband. Patterson also testified that Terry never denied killing Stokes, only that he thought the evidence against him was too weak for a conviction.

On November 6, 2012, Terry sought to suppress the April 8 swab because law enforcement had omitted the swab from the warrant's inventory in violation of Va. Code § 19.2-67. He also asked the court to suppress the April 11 swab even though no violation had occurred. Further, Terry argued that the search warrants for the Mazda 626 were invalid. The Circuit Court of the City of Danville denied the motions because (1) the omission of an item from a warrant may violate a statute, but does not result in evidence exclusion unless the statute provides for exclusion, or a constitutional violation occurs, (2) the April 11 swab was proper, and (3) Terry had no standing to object to the search of the Mazda.

A jury found Terry guilty of first-degree murder and use of a firearm in the commission of a murder, and based on the same evidence, the presiding judge simultaneously found Terry guilty of possession of a firearm by a convicted felon. On December 14, 2012, the circuit court judge sentenced Terry to life imprisonment, plus an additional ten years.[5]

Terry appealed the trial court's denial of his motion to suppress as well as the sufficiency of the evidence, but the Court of Appeals of Virginia denied the petition on August 28, 2013. After that, Terry appealed to the Supreme Court of Virginia, but the court refused to hear the

_____

[5] The Danville jury suggested life imprisonment for the first-degree murder conviction, and five years imprisonment for use of a firearm in the commission of a murder. The circuit court followed the jury's suggestion, and added five more years for possession of a firearm by a convicted felon.

5

request on March 7, 2014. Terry then filed a petition for a writ of habeas corpus with the Supreme Court of Virginia, but the court denied relief on January 6, 2016. Lastly, Terry filed this petition for a writ of habeas corpus on February 11, 2016 with the same claims as his state habeas:

A. The trial court erred in ruling that (1) the petitioner lacked standing to contest a search of a vehicle and (2) the evidence was admissible.
B. The trial court erred in denying petitioner's motion to strike.
C. Counsel was ineffective for (1) failing to move the trial court to suppress illegally seized evidence and (2) failing to challenge the search warrant.
D. Counsel was ineffective for failing to move the trial court to suppress evidence obtained by an unlawful search warrant.
E. Counsel was ineffective for failing to move the trial court to suppress evidence seized from the petitioner's residence (1) by failing to challenge the search warrant supporting the search of his residence, (2) by failing to challenge the petitioner's detention during the search of his residence, and (3) by failing to challenge the seizure of "green plant material" from his residence.
F. Counsel was ineffective due to a conflict of interest.
G. Counsel was ineffective for simultaneously representing a client with an adverse interest to the petitioner.
H. (1) Counsel was ineffective for failing to object or move for a mistrial when the venire said they would not find the petitioner "not guilty" if the Commonwealth failed to meet its burden and for failing to raise the issue on appeal. (2) Petitioner's right to a fair trial was violated when the venire said they would not find the petitioner "not guilty" if the Commonwealth failed to meet their burden.
I. The trial court erred in failing to appoint substitute counsel to advise the petitioner regarding a waiver of a conflict of interest.
J. (1) Counsel was ineffective for failing to object to the competency of a witness for the Commonwealth, and (2) the petitioner's right to due process was violated by counsel's failure to object to the witness' competency.
K. Counsel was ineffective (1) for failing to object that the Commonwealth did not establish a proper chain of custody for a cell phone and (2) for failing to impeach a detective with inconsistent testimony regarding who seized the petitioner's cell phone.

Respondent moves to dismiss Terry's claims as procedurally barred and/or without merit, and Terry has responded to the motion.

## II. Exhaustion and Procedural Default

6

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) (citing 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999)). To meet the exhaustion requirement, a petitioner "must have presented to the state court both the operative facts and the controlling legal principles." Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002) (internal quotation marks and citation omitted). "A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker, 220 F.3d at 288 (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)).

Terry has exhausted the available state court remedies for each of his federal claims because he has either "fairly present[ed] his claim to the state's highest court" or "a state procedural rule would bar consideration if the claim was . . . presented to the state court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), overruled on other grounds by U.S. v. Barnette, 644 F.3d 192 (4th Cir. 2011). Terry's direct appeal is final and any additional state habeas action would be procedurally defaulted both under Virginia's statute of limitations, Va. Code § 8.01-654(A)(2), and Virginia's successive petition statute. Va. Code § 8.01-654(B)(2). Claims that are procedurally barred under state law are barred from federal habeas review unless Terry can demonstrate cause for the default and prejudice from the constitutional error, or a miscarriage of justice. Baker, 220 F.3d at 288; Gray, 518 U.S. at 162.

Claim A is procedurally barred by Stone v. Powell, 428 U.S. 465 (1976), because "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on

7

the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial."[6]  Id. at 482.  Generally, "[e]vidence obtained by police officers in violation of the Fourth Amendment is excluded at trial in the hope that the frequency of future violations will decrease." Id. at 492.  For habeas petitions, "contribution, if any, of the consideration of search-and-seizure claims of state prisoners on collateral review is small in relation to the costs."  Id. at 493.

Terry alleged that law enforcement officials violated his Fourth Amendment rights by searching the Mazda, and therefore the trial court erred by holding that (1) Terry had no standing to object to the search, and (2) the evidence was admissible.  However, the Stone doctrine bars Claim A from federal habeas review because Terry was offered a full and fair opportunity to litigate these claims: (1) the trial court held a hearing on Terry's motion to suppress, (2) the Court of Appeals of Virginia analyzed Terry's claim de novo and found no violation, and (3) the Supreme Court of Virginia reviewed the claim.  Thus, Claim A is barred from federal habeas review.

Additionally, in Terry's state habeas petition, the Supreme Court of Virginia found that portions of Claim F and Claim H, and the entirety of Claim I are procedurally barred under Slayton v. Parrigan, 215 Va. 27, 205 S.E.2d 680 (1974), cert. denied, 419 U.S. 1108 (1975). Slayton is an adequate and independent state procedural rule that precludes federal habeas review when a petitioner could have raised an issue at trial and on appeal but failed to do so. Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998).  In Claim F, Terry failed to raise the issue that the trial court erred because the court should have appointed another attorney; in Claim H,

---

[6] In Stone, the Supreme Court elaborated upon the rationale for limiting exclusion in habeas petitions:
A claim of illegal search and seizure under the Fourth Amendment is crucially different from many other constitutional rights; ordinarily the evidence seized can in no way have been rendered untrustworthy by the means of its seizure and indeed often this evidence alone establishes beyond virtually any doubt that the defendant is guilty.
428 U.S. at 490.  The Supreme Court continued: "The disparity . . . between the error committed by the police officer and the windfall afforded a guilty defendant by application of the [exclusionary] rule is contrary to the idea of proportionality that is essential to the concept of justice." Id.

8

Terry failed to raise the issue that the trial court erred in permitting biased jurors to hear his case; and in Claim I, Terry failed to raise the issues that the trial court erred when (1) the court failed to appoint substitute counsel to advise Terry on whether he should waive counsel's conflict of interest, and (2) because the court permitted the public defender's office to withdraw from representing the Commonwealth's witness instead of requiring the office to withdraw from representing Terry. Terry fails to show cause for these defaults, or a miscarriage of justice. Therefore, the court grants the respondent's motion to dismiss these parts of Claims F, H, and I as procedurally barred from federal habeas review.

### III.   Standards of Review

To obtain federal habeas relief, Terry must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under 28 U.S.C. § 2254(d), however, the federal habeas court may not grant a writ of habeas corpus based on any claim that a state court decided on the merits unless that adjudication:

(1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 403-13 (2000). "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable."[7] Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Under this standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could agree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (omitting internal quotations).

---

[7] "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." Williams, 529 U.S. at 410 (citing Wright v. West, 505 U.S. 277, 287 (1992)) (emphasis in original).

Case 7:16-cv-00049-MFU-RSB   Document 23   Filed 01/27/17   Page 9 of 31   Pageid#: 1314

Under § 2254(d), "state-court decisions [must] be given the benefit of the doubt." _Woodford v. Visciotti_, 537 U.S. 19, 24 (2002). Additionally, § 2254(d) "refers only to a 'decision,' which resulted from an 'adjudication,'" and does not "requir[e] a statement of reasons." _Harrington_, 562 U.S. at 98.

Further, for claims of insufficient evidence, federal courts can only grant habeas relief "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." _Jackson v. Virginia_, 443 U.S. 307, 324 (1979).

Terry also raises claims of ineffective assistance of counsel. To state a constitutional claim for ineffective assistance, Terry must satisfy the two-prong _Strickland v. Washington_ test by showing (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." 466 U.S. 668, 686-687 (1984). A petitioner must overcome "a strong presumption" that counsel's tactical decisions during the representation were reasonably competent, and the court may adjudge counsel's performance deficient only when a petitioner demonstrates that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." _Id._ at 689-90.[8]

The court must deny relief if petitioner fails to establish either of the _Strickland_ prongs. Even if Terry can establish deficient performance under this high standard, relief remains unavailable unless he also shows a "reasonable probability" that, but for counsel's errors, the outcome of the proceeding would have been different. _Id._ at 694-95. Additionally, when reviewing a _Strickland_ claim under the AEDPA, the court's review is "doubly" deferential. _See Harrington_, 562 U.S. at 105. Lastly, "[a]n attorney's failure to raise a meritless argument [] cannot form the basis of a successful ineffective assistance of counsel claim because the result of

---

[8] "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." _Yarborough_, 540 U.S. at 8.

10

the proceeding would not have been different had the attorney raised the issue." United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999); see also Moore v. United States, 934 F. Supp. 724, 731 (E.D. Va. 1996).

## IV. Merits of Claims

First, even if Claim A were not defaulted, it is without merit. The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. The Fourth Amendment protects victims of unreasonable searches and seizures by excluding illegally obtained evidence from criminal proceedings. United States v. Calandra, 414 U.S. 338 (1974). However, Fourth Amendment protection requires the violation of a constitutional right; "there is no exclusionary rule generally applicable to statutory violations." United States v. Clenney, 631 F.3d 658, 667 (4th Cir. 2011) (quoting United States v. Abdi, 463 F.3d 547, 556 (6th Cir. 2006)).

For Claim A, the state trial court found that Terry lacked standing to challenge the search of the Mazda because he did not own the vehicle, had no personal car keys, and was mainly a passenger; therefore, he had no reasonable expectation of privacy. Also, Terry conceded the validity of the search warrants during the trial. The court agrees with the Court of Appeals of Virginia's analysis: "The validity of the warrants' execution is unchallenged," and since "[Terry] cannot claim that a search conducted pursuant to a valid warrant violated his Fourth Amendment rights . . . we need not engage in an analysis to a car that was lawfully searched."[9] Terry v. Commonwealth, No. 0085-13-3, at 4 (Va. Ct. App. Aug. 28, 2013) (ECF No. 10.1). The Fourth Amendment protects against unreasonable searches and seizures, but officers acted properly by

---

[9] The Court of Appeals of Virginia was commenting on the fact that a Katz v. United States, 389 U.S. 347 (1967) analysis was unnecessary. Terry lacked a reasonable expectation of privacy; his Fourth Amendment rights were not implicated; and so the exclusionary rule did not apply.

11

obtaining search warrants based on probable cause. The exclusionary rule does not suppress legally obtained evidence. Further, Terry's argument that the failure to properly inventory the first DNA swab should have resulted in the suppression of that evidence is incorrect:

> While violations of state procedural statutes are viewed with disfavor . . . neither the Virginia Supreme Court nor the legislature has adopted an exclusionary rule for such violations . . . [and] the Virginia Supreme Court has consistently declined to impose an exclusionary rule where no deprivation of the defendant's constitutional rights occurred.

Thompson v. Commonwealth, 10 Va. App. 117, 122, 390 S.E.2d 198, 201 (1990) (citations removed). Regardless, federal habeas courts do not grant relief "based on a belief that the trial judge incorrectly interpreted the [state's evidence code]" unless the mistake "so infected the entire trial that the resulting conviction violates [the Constitution]." Estelle v. McGuire, 502 U.S. 62, 72 (1991). No constitutional violation occurred here; therefore, the court grants the motion to dismiss as to Claim A.

In Claim B, Terry argues that the trial court erred in denying his motion to strike. His contention is meritless. At trial, Terry, through counsel, sought to suppress several items obtained pursuant to search warrants, including: plant material, the unlisted DNA swab, and the listed DNA swab. Terry claims that the searches violated not only Virginia law, but also his Fourth and Fourteenth Amendment rights, because law enforcement failed to list the first DNA swab in the search warrant's inventory. However, the trial court held that the exclusionary rule did not apply unless a violation of Terry's constitutional rights occurred, and that law enforcement's statutory violation regarding the unlisted DNA swab did not "taint" the integrity of the other searches.[10] With no proof of a constitutional violation offered by Terry and both search warrants covering the collection of DNA, the trial court admitted the evidence.

---

[10] "[N]oncompliance with Section 19.2-57 does not require suppression of evidence." Tr. at 62. Also, "I do not think that [noncompliance with the statute] rises to a constitutional issue." Id. at 88.

Case 7:16-cv-00049-MFU-RSB   Document 23   Filed 01/27/17   Page 12 of 31   Pageid#: 1317

The Court of Appeals of Virginia affirmed the conviction and the evidence admission: "Sufficient circumstantial evidence existed for a reasonable mind to conclude that [Terry] was responsible for the death of Kendra Stokes." Terry, No. 0085-13-3, at 8 (ECF No. 10.1). This finding was not an unreasonable application of federal law, nor has Terry demonstrated facts to overcome the established record. The Court of Appeals of Virginia cited the major circumstantial evidence against Terry, including: (1) Terry sought to purchase marijuana that night, (2) he had called Stokes on his own phone, (3) Stokes set up a deal with Hairston, (4) Stokes, Hairston, and Terry met in the parking lot, (5) Stokes left in the white Mazda, (6) in the days after the murder, detectives observed the Mazda and saw that only the rear of the car had been cleaned, (7) Terry gave inconsistent stories about who used the Mazda on the night of the murder, (8) the DNA swabs from the Mazda matched Stokes, (9) Terry had no confirmable alibi, (10) the .40 caliber gun cleaning kit found in Terry's home, (11) and also statements Terry made in jail to his distant cousin regarding his involvement in the murder. Therefore, the court grants the motion to dismiss as to Claim B.

In Claim C, Terry alleges that his trial counsel was ineffective for (1) failing to move the trial court to suppress illegally seized evidence and for (2) failing to challenge the search warrant. Terry argues that counsel failed to move to suppress the searches of his cell phone and cell phone records, and that the search warrant failed to: describe the property to be searched and the information sought with sufficient specificity, state the offense to which the warrant was related or name Stokes as the victim, name or describe Terry, list any relationship between Terry and Stokes' murder, or include an attached affidavit.[11] Claim C satisfies neither the

---

[11] Terry claims that the record establishes that the search warrant was a so-called "general search warrant" prohibited under the Fourth Amendment and that the officers did not attach an affidavit until after the warrant's execution. However, Terry offers no facts to support such claims. Merely stating that something occurred does not

13

"performance" nor the "prejudice" prong of Strickland. In his petition, Terry appears to attempt to quote Va. Code § 19.2-56: "The warrant did not 'state the related offense, in particular, to which the search was to be conducted and the omission shall render the warrant defective and the evidence seized in the execution of the warrant inadmissible.'"[12] Pet'r's Br., Terry v. Fleming, No. 1074591, at 19 (ECF No. 1). In addressing Terry's state habeas petition, the Supreme Court of Virginia found that:

> The record, including the warrant authorizing the search and seizure of [Terry's] cell phone and the supporting affidavit, demonstrates that the warrant sufficiently identified the property to be seized and the information to be sought, stated that the search was a related to the first degree murder of Stokes, and described that the affiant had first-hand knowledge that [Terry] used the cell phone to call and text Stokes before her death. Accordingly, the warrant does not suffer from the defects [Terry] alleges and counsel could have reasonably determined a motion to suppress on those grounds would have been futile. Thus, [Terry] has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.[13]

Terry v. Fleming, No. 1074591, at 2 (Va. Jan. 6, 2016) (ECF No. 10.2). The court agrees with the Supreme Court of Virginia's analysis, and the finding under Strickland is neither an

---

make it so, and Terry cannot overcome the deference given to the state courts in fact-finding with conclusory statements that have no demonstrable supporting facts or evidence. See 28 U.S.C. § 2254(e).

[12] This quoted language does not actually appear in Va. Code § 19.2-56, or any other code section that the court could find. However, the Court of Appeals of Virginia in Lebedun v. Commonwealth held that "[t]he failure of a warrant to state the related offense renders the warrant 'fatally defective' and the evidence seized in the execution of the warrant inadmissible." 27 Va. App. 697, 708, 501 S.E.2d 427, 432 (citing Va. Code § 19.2-56; Gilluly v. Commonwealth, 221 Va. 38, 41, 267 S.E.2d 105, 106-07 (1980)). The exclusionary rule does not apply to "fatally defective" warrants because of Section 19.2-56, but rather as a Fourth Amendment protection against "general search warrants." See Lebedun, 27 Va. App. at 711, 501 S.E.2d at 433-34; Va. Code § 19.2-56. Virginia has repeatedly held that "exclusion of evidence is not required where a statutory requirement is violated, but . . . the Fourth Amendment is not." Hatcher v. Commonwealth, 14 Va. App. 487, 493, 419 S.E.2d 256, 260 (Va. App. Ct. 1992). Also, "an attached affidavit which recites the offense provides the necessary notice because the affidavit 'become[s] part of the search warrant.'" Lebedun, 27 Va. App. at 709, 501 S.E.2d at 432 (quoting Gilluly, 221 Va. at 41, 267 S.E.2d at 107).

[13] Terry also voluntarily gave permission to the Danville Police Department to search his cell phone on April 9, 2011 when he signed a consent to search form. Pet'r's Br., Exhibit K at 1, Terry v. Fleming, No. 1074591 (Va. May 25, 2015). Law enforcement did file a search warrant for his phone records, and the warrant stated that the information sought was phone records related to the first-degree murder of Kendra Stokes. Id. at 2.

14

unreasonable application of federal law nor based on an unreasonable determination of facts. Thus, the court grants the motion to dismiss as to Claims C(1) and C(2).

In Claim D, Terry asserts that he was denied effective assistance of counsel because counsel failed to challenge the validity of the April 8, 2011 search warrant. Terry's allegations include: the warrant did not reference or name Terry, did not identify the individual whose biological material and clothing should be searched for, did not describe with particularity the caliber shells or weapon to be searched for, did not identify the murder investigation it pertained to, was not served on Terry, did not state with sufficient particularity the things to be seized during the search, was not supported by probable cause, and failed to establish any connection between Terry and the vehicle.

The claim is without merit, because it does not satisfy either the performance or prejudice prong of Strickland. On habeas review, the Supreme Court of Virginia found:

> The record, including counsel's motion to suppress, the trial transcript, and the relevant warrant, demonstrates that the trial court concluded [Terry] did not have standing to challenge the search of the vehicle.[14] Moreover, the warrant does not suffer from the defects [Terry] identifies. The warrant and the attached affidavit described that [Terry] was driving the vehicle when he met with Stokes immediately prior to her death, sufficiently described the place to be searched and the things to be seized, and stated that the warrant was issued in relation to Stokes' murder. It was not required that the warrant be served on Terry. Accordingly, counsel could have reasonably determined a motion to suppress on the grounds identified by [Terry] would have been futile. Thus, [Terry] has failed to demonstrate that counsel's performance was deficient or that there is reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.[15]

---

[14] Terry admits in his response to the motion to dismiss that he did not have standing to challenge the search warrant.

[15] Terry claims that he has requested the affidavit, but the document is still under seal. He argues that without the affidavit, he has no way to determine whether probable cause existed. In fact, Terry believes that "[t]he evidence collected points to Cathy Corker and not Terry." Pet'r's Response to the Mot. to Dismiss, at 22 (ECF No. 18) (emphasis in original). He also claims that since there was no DNA or other evidence to prove that he took Corker's Mazda 626 on the day of Stokes' murder, the circumstantial evidence presented at trial prejudiced him, and the trial court should have suppressed any evidence collected from the vehicle. Terry appears to misunderstand the nature of circumstantial evidence. Circumstantial evidence, which the prosecution relied on heavily in Terry's

15

<u>Terry</u>, No. 1074591, at 2-3 (ECF No. 10.2). In another portion of Claim D, Terry contends that his counsel was ineffective for failing to challenge the validity of the April 11, 2011 search warrant, because the underlying warrant failed to name or describe Terry, was not provided to Terry, established no connection between Terry and the vehicle, and did not state with sufficient particularity the items to be seized. In addressing Terry's habeas petition, the Supreme Court of Virginia stated:

> The record, including counsel's motion to suppress, the trial transcript, and the relevant warrant, demonstrates that the trial court concluded [Terry] did not have standing to challenge a search of the vehicle. Moreover, the warrant does not suffer from the defects [Terry] identifies. The warrant and the attached affidavit described that Stokes was seen in the vehicle ten to fifteen minutes before her death traveling toward the area where her body was discovered and specified that various biological evidence be seized. It is not required that the warrant be served on or identify [Terry]. Accordingly, counsel could have reasonably determined a motion to suppress on the grounds identified by [Terry] would have been futile. Thus, [Terry] has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

<u>Id.</u> at 3. The court agrees with the Supreme Court of Virginia's analysis. Terry's claims do not have basis in the factual record, and the state court findings are not contrary to federal law and/or the Constitution. Therefore, Terry failed to satisfy either of the prongs under <u>Strickland</u>, and the court must grant respondent's motion to dismiss as to Claim D.

In Claim E, Terry argues that he was denied effective assistance of counsel because counsel failed to challenge the validity of the search warrant regarding Terry's residence or move for the suppression of the evidence gathered therefrom. Terry alleges that the warrant was

---

conviction, is indeed not "direct proof." However, "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." <u>Rogers v. Missouri Pacific R.R. Co.</u>, 352 U.S. 500, 508 n.17 (1957). Additionally, the Supreme Court of the United States "ha[s] never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required. <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90, 100 (2003) (citing <u>Holland v. United States</u>, 348 U.S. 121, 140 (1954)). In criminal cases, circumstantial evidence is "intrinsically no different from testimonial evidence." <u>Holland</u>, 348 U.S. at 140.

invalid because his residence was located in Pittsylvania County, and law enforcement only filed the warrant in the Circuit Court of the City of Danville, in violation of Va. Code § 19.2-54. Terry's claim is without merit. On habeas review, the Supreme Court of Virginia held:

> Code § 19.2-54 does not provide for the exclusion of evidence in the event of its violation, [Terry] has not argued that any statutory violation implicated his constitutional rights, and [Terry] has identified no prejudice stemming from filing the relevant warrant in Danville and not Pittsylvania County. See Frye v. Commonwealth, 231 Va. 370, 377, 345 S.E.2d 267, 273 (1986) (unless statute states otherwise, non-prejudicial procedural violation does not trigger exclusionary rule). Thus, [Terry] has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Terry v. Fleming, No. 1074591, at 4 (ECF No. 10.2). The court agrees with the Supreme Court of Virginia's analysis. Frye controls, and although Terry mentions the Fourth and Fourteenth Amendment in his petition, he offers no factual basis for a constitutional violation. Instead of establishing any violations of his Fourth and Fourteenth Amendment rights, Terry repeatedly refers to the statutory violation. However, a mere procedural error does not require evidence exclusion and does not necessarily raise constitutional issues by itself. See Clenney, 631 F.3d at 667 ("In the statutory context, suppression is a creature of the statute, and its availability depends on the statutory text.").

In another portion of Claim E, Terry claims that his counsel was ineffective for failing to challenge the validity of the search warrant for Terry's residence because the warrant failed to: identify the murder it related to, state with particularity the things to be searched for and seized, describe the city or county where Terry's residence was located, include an attached affidavit, and direct the warrant at the sheriff of the county in which Terry resided. In its habeas order, the Supreme Court of Virginia held that the claim failed to satisfy the requirements of the two-prong Strickland test:

> The record, including the warrant authorizing the search of [Terry's] residence and the attached affidavit, demonstrates that the warrant stated it was issued in relation to Stokes' murder, sufficiently described the place to be searched and the things to be seized, included an attached affidavit, and was directed to the proper authority. Accordingly, counsel could have reasonably determined that challenging the warrant on the grounds [Terry] identifies would have been fruitless.

Terry v. Fleming, No. 1074591, at 4 (ECF No. 10.2). The court agrees with the Supreme Court of Virginia's analysis. The record shows that Terry's claim is unfounded, and therefore cannot satisfy Strickland.

Also in Claim E, Terry maintains that he was denied the effective assistance of counsel when counsel failed to challenge the validity of the search of his residence after officers neglected to file a return and inventory sheet following the execution of the warrant. The state habeas court stated:

> The record, including the warrant authorizing the search of [Terry's] residence and the attached inventory, demonstrates that the return and the inventory were properly completed and filed. Accordingly, counsel could have reasonably determined that challenging the warrant on the grounds petitioner identifies would have been fruitless. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Id. at 5. The court agrees with the Supreme Court of Virginia's analysis. Terry attempts to demonstrate facts contrary to the established record but offers no supporting evidence for his conclusory statements. Therefore, he fails to overcome the deferential standard under the AEDPA and cannot satisfy Strickland.

In an additional portion of Claim E, Terry contends that counsel was ineffective for failing to challenge the search of his residence because officers detained Terry during the search without an arrest warrant and without informing him of his rights. In his state habeas petition, the Supreme Court of Virginia held:

18

If [Terry] was in the immediate vicinity of his residence when officers executed the search warrant, they were entitled to detain [Terry] while they completed the search. Accordingly, [Terry] fails to describe circumstances indicating his detention was unlawful, and counsel could have reasonably determined that challenging the search on the grounds [Terry] identifies would have been fruitless. See Bailey v. United States, 133 S. Ct. 1031 (2013) (explaining officers' authority to detain occupants of premises incident to execution of a search warrant on the premises). In any event, [Terry] fails to identify what evidence, if any, officers procured as a result of his temporary detention during the execution of the search warrant or allege that he was subject to questioning by officers that may have warranted [Terry] being informed of his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 444-45 (1966). Thus, [Terry] has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Id. The court agrees with the state habeas court's analysis. Even though law enforcement physically touched Terry and placed him in handcuffs for over two hours without an arrest warrant, the officers acted appropriately pursuant to the search warrant.[16] Terry was present on the property as officers executed the search warrant, and therefore officers properly detained him on the back porch during the search. Terry's claim is without merit, and thus fails to satisfy the two-part test enunciated in Strickland.

In the final portion of Claim E, Terry asserts that he was denied effective assistance of counsel when counsel failed to challenge the validity of the seizure of "green plant material" during the search of Terry's home on the ground that the seizure fell outside the scope of the search warrant. On habeas review, the Supreme Court of Virginia analyzed the claim:

The record, including the trial transcript, demonstrates that officers found the "green plant material" in a box in [Terry's] closet, which was well within the scope of the warrant that permitted officers to search for, among other things, firearms, shell casings, and bullets. There was no requirement that the warrant

---

[16] "[O]fficers executing a search warrant [are permitted] 'to detain the occupants of the premises while a proper search is conducted.'" Bailey, 133 S. Ct. at 1037 (quoting Michigan v. Summers, 452 U.S. 692, 705 (1981)). The Supreme Court of the United States has identified several important interests in allowing law enforcement to detain without an arrest warrant pursuant to a search warrant: (1) "minimizing the risk of harm to the officers," (2) "orderly completion of the search . . . [without] interference with the execution of the search warrant," and (3) "preventing flight in the event that incriminating evidence is found." Id. at 1038-1040 (quoting Summers, 452 U.S. at 702)).

19

anticipate the presence of all potentially inculpatory evidence, and officers were entitled to seize any such evidence once it came lawfully within their plain view. See Blair v. Commonwealth, 225 Va. 483, 490, 303 S.E.2d 881, 885-86 (1983). Thus, [Terry] has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Terry, No. 1074591, at 6 (ECF No. 10.2). The court agrees with the state habeas court's analysis. The plain view doctrine applies "[when] the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character."[17] Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971). In this case, officers knew at the time of the search of Terry's residence that Stokes had sold fake marijuana to Terry. When law enforcement discovered "green plant material" at Terry's residence, they immediately recognized that the material could be related to the fake marijuana purchase and subsequent murder of Stokes. See Horton v. California, 496 U.S. 128, 142 (1990). Thus, none of the portions of Claim E satisfy the requirements of Strickland, and the court grants respondent's motion to dismiss as to Claim E.

In Claim F, Terry contends that he was denied effective assistance because counsel had a conflict of interest. In September 2012, without any notice to Terry, counsel moved to withdraw from representing him. Just prior to the September 2012 hearing on the motion to withdraw, counsel informed Terry that a conflict had existed at the public defender's office since the beginning of his representation. Counsel insisted that he could not offer advice to Terry or elaborate on the conflict, and that the court would have to appoint a different attorney. Terry claims that as a result of the surprising withdrawal attempt, he had no time to seek advice from alternate counsel. During the hearing, counsel admitted that his office had represented Dwayne

---

[17] "Where, once an otherwise lawful search is in progress, the police inadvertently come upon a piece of evidence, it would often be a needless inconvenience, and sometimes dangerous . . . to require [the police] to ignore it until they have obtained a warrant particularly describing it." Id. at 467-68.

Pruitt, a material witness in Terry's case, in an unrelated but ongoing matter since 2010. Counsel did not discover the conflict during discovery because of a variation in the spelling of "Dwayne."

Terry argues that counsel did not check for potential conflicts and/or should have realized the conflict upon receiving discovery mentioning Pruitt. If counsel had informed Terry of the conflict at the time of discovery (nine months prior to the September hearing), then Terry could have arranged other counsel, represented himself, or taken a plea. The trial court was extremely reluctant to appoint new counsel in late September 2012 when the trial was set for early November. Terry also contends that although counsel withdrew the motion to withdraw, counsel never explained to Terry the full extent of the conflict. Terry speculates that because of the prior conflict, counsel did not zealously attack Pruitt's credibility at trial. However, on habeas review, the Supreme Court of Virginia found that:

> The record, including counsel's motion to withdraw and the transcripts of the hearings in which the trial court considered the motion, demonstrates that the public defender's office for which counsel worked was appointed to represent Pruitt on a matter unrelated to [Terry's] charges prior to counsel's appointment to represent [Terry]. Shortly before counsel moved to withdraw from [Terry's] representation, the public defender's office was appointed to represent Pruitt on a second matter unrelated to [Terry's] charges. Counsel did not learn of the potential conflict of interest until the "summer" of 2012 because, although [Terry] had mentioned Pruitt in a statement the Commonwealth provided to counsel in December 2011, a variation in the spelling of Pruitt's name caused the public defender's office to miss the problem during its conflicts check. Counsel did not bring the potential conflict to the court's attention until late September 2012 because he was advised to wait until Pruitt was in fact subpoenaed to testify against [Terry]. Counsel informed the trial court that he had contacted the Virginia State Bar, which had advised counsel that he could continue representing [Terry] if the public defender's office withdrew from further representation of Pruitt. Counsel stated that neither he nor the public defender's office received information from Pruitt that might be relevant to [Terry's] case and offered to obtain a "waiver" from Pruitt.
> Accordingly, [Terry] has failed to establish that counsel labored under an actual conflict of interest. See Mickens v. Taylor, 535 U.S. 162, 172 (2002). Contrary to [Terry's] insinuation, the public defender's office simultaneous

representation of [Terry] and Pruitt on unrelated charges prior to [Terry's] trial did not inherently result in an actual conflict of interest. See Cuyler v. Sullivan, 446 U.S. 335, 347-49 (1980) (stating that "multiple representation does not violate the Sixth Amendment unless it gives rise to a conflict of interest"). [Terry] has not described any concrete instance in which the public defender's office's obligations to Pruitt diverged with [Terry's] interests. See Moore v. Hinkle, 259 Va. 479, 487, 527 S.E.2d 419, 423 (2000).

Moreover, although [Terry] summarily suggests counsel could have more effectively cross-examined Pruitt at trial and that Pruitt was necessarily biased against [Terry], [Terry] fails to sufficiently elaborate on these summary claims. [Terry] does not suggest what additional questioning counsel might have pursued nor does he describe in what way Pruitt was suspected of being connected to Stokes' murder. Likewise, [Terry] provides no support for his summary allegation that counsel did not complete an adequate conflicts check or pre-trial investigation due to the public defender's office's representation of Pruitt. Accordingly, [Terry] has failed to show the alleged conflict had an adverse effect on counsel's performance. See Mickens, 535 U.S. at 172. Therefore, [Terry] has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Terry, No. 1074591, at 7-8 (ECF No. 10.2). The court agrees with the Supreme Court of Virginia's analysis that, although a potential conflict did exist, Mickens requires a petitioner to prove not only that "his lawyer was subject to a conflict of interest," but also "that the conflict adversely affected counsel's performance." Mickens, 535 U.S. at 171.

Terry has failed to prove the existence of a true conflict once the public defender's office withdrew from representing Pruitt, and Terry has also failed to prove that any potential conflict adversely affected counsel's performance. Further, because Pruitt's charges were unrelated and counsel never received any relevant information from Pruitt regarding Terry, Terry has not demonstrated that counsel acted deficiently. Therefore, the state habeas court's findings are not an unreasonable application of federal law, nor are they based on an unreasonable determination of facts.

In a procedurally defaulted portion of Claim F, Terry contends that the trial court erred by not appointing Terry a different attorney because of a conflict of interest. "[I]t is not the

province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." McGuire, 502 U.S. at 68. Here, the Circuit Court of the City of Danville followed Virginia law and the Virginia State Bar's advice to counsel in determining that substitute counsel was unnecessary. Therefore, federal habeas relief is inappropriate, as federal collateral review does not exist for prisoners to relitigate state law determinations. Brecht v. Abrahamson, 507 U.S. 619, 633 (1993) (citing Barefoot v. Estelle, 463 U.S. 880, 887 (1983)).

However, federal habeas relief is available if the trial error violated fundamental fairness under the Due Process Clause of the Fourteenth Amendment. See id. at 633; McGuire, 502 U.S. at 72. Under the Kotteakos standard, the trial error must have had "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637. Terry has not offered any factual support for his allegations that the trial court's refusal to appoint substitute counsel affected the outcome of the trial. The demanding Kotteakos standard requires more than bare legal assertions, and Terry has failed to show that the trial court's error resulted in a fundamentally unfair verdict. Therefore, the court grants the motion to dismiss as to Claim F.

In Claim G, Terry argues that counsel was ineffective for simultaneously representing a client with a conflicting interest to Terry. In his state habeas proceeding, the Supreme Court of Virginia found that Claim G did not satisfy the two prong test in Strickland:

> The record, including [Terry's] trial record, demonstrates that the motion to withdraw provided to this Court by [Terry] was not filed with or resolved by the trial court. Moreover, [Terry] has not identified the other client who created the purported conflict or the nature of any such conflict, and has not identified how the alleged conflict adversely affected counsel's performance. See Mickens, 535 U.S. at 172. Therefore, [Terry] has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

23

Terry v. Fleming, No. 1074591, at 8-9 (Va. Jan. 6, 2016) (ECF No. 10.2). The court agrees with the state habeas analysis. Terry has not satisfied his burden under Strickland and Mickens to prove that an actual conflict adversely affected counsel's performance. Terry offers no evidence of deficient performance, no factual support besides the bare assertion that a conflict existed, and no concrete demonstration of the purported conflict affecting counsel's representation. Therefore, the court grants the respondent's motion to dismiss as to Claim G.

In the first portion of Claim H, Terry contends that counsel was ineffective for failing to strike the entire venire or move for a mistrial when the venire said that they would not find Terry "not guilty" if the Commonwealth failed to meet its burden. In addressing Terry's state habeas petition, the Supreme Court of Virginia stated:

> The record, including the trial transcript, demonstrates that, in initially questioning the venire members, the trial court confirmed that none of them had formed any opinion as to [Terry's] guilt or had any bias or prejudice against [Terry]. The venire members also assured the court they understood that [Terry] was presumed innocent and that the Commonwealth was required to prove [Terry's] guilt beyond a reasonable doubt. The venire members also confirmed that they would follow the law as instructed by the court, limit their consideration to the evidence presented at trial, and that there was no reason they could not give the parties a fair and impartial trial.
>
> During its questioning of the venire, the Commonwealth asked if the potential jurors could agree to find [Terry] guilty if the Commonwealth proved beyond a reasonable doubt that [Terry] murdered Stokes. The venire members responded they could.
>
> Counsel then asked the venire "if the Commonwealth after presenting all of the evidence it has fail[ed] to show beyond a reasonable doubt that Mr. Terry committed this murder, will you find Mr. Terry not guilty?" Each venire member responded in the negative. However, the venire members then immediately confirmed that they would apply the law as instructed to the evidence they heard at trial. Counsel then proceeded to question the venire on other matters regarding their potential biases or prejudices.
>
> Given the context of the entire voir dire, counsel could have reasonably determined that moving to strike all the potential jurors based on their one, seemingly confused answer to counsel's question regarding the Commonwealth's burden of proof would have been unsuccessful. During other portions of the voir dire, the potential jurors stated that they understood the commonwealth's burden

24

to prove [Terry] guilty beyond a reasonable doubt, would follow the court's instruction regarding the law, and would otherwise impartially decide [Terry's] case based on the evidence. See Calhoun v. Commonwealth, 226 Va. 256, 259, 307 S.E.2d 896, 898 (1983) (explaining that qualification of juror does not turn on single answer to a voir dire question, but must be considered in context of the voir dire as a whole). Thus, counsel could have concluded there was no reasonable doubt regarding the prospective jurors' ability to "stand indifferent in the cause." Va. Code § 8.01-358. For the same reasons, [Terry] has failed to establish a reasonable probability that a motion to strike the venire would have been granted or that [Terry] was denied an impartial jury. Therefore, [Terry] has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Terry, No. 1074591, at 9-10 (ECF No. 10.2). The court agrees with the state habeas court's

analysis. In Calhoun, two veniremen had read news articles regarding the defendant, and their

"voir dire responses indicat[ed] preconceived opinions of [the defendant's] guilt." 226 Va. at

259, 307 S.E.2d at 898. However, the court refused to disqualify them because their comments

"must be read in context with the entire transcript of the voir dire." Calhoun, 226 Va. at 259,

307 S.E.2d at 898 (quoting Briley v. Commonwealth, 222 Va. 180, 182, 279 S.E.2d 151, 152

(1981)). The jurors stated that they had not formed a final opinion, and "understood the

presumption of innocence, that the defendant bore no evidentiary burden, and that the

Commonwealth was required to prove guilt beyond a reasonable doubt." Id. For Terry,

members of the venire demonstrated on multiple occasions that they understood the

Commonwealth's burden. Granted, the venire appears to have misunderstood one particularly

confusing question; however, the jurors did not show bias or prejudice against Terry or reveal an

inability to follow court instructions and proper jury procedures.

In another portion of Claim H, Terry argues that counsel was ineffective for failing to

claim on appeal that the jurors displayed impermissible partiality when they each indicated their

intent to convict Terry without hearing any evidence. On habeas review, the Supreme Court of Virginia found:

> Generally, the selection of issues to address on appeal is left to the discretion of appellate counsel, and counsel need not address every possible issue on appeal. Jones v. Barnes, 463 U.S. 745, 751-52 (1983). Moreover, as explained above, the record, including the transcript of the voir dire of the venire, demonstrates that there was little doubt as to the qualification of the potential jurors. Accordingly, counsel could have reasonably believed raising the issue on appeal would have been unsuccessful. Therefore, [Terry] has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Terry, No. 1074591, at 10-11 (ECF No. 10.2). The court agrees with the state habeas court's analysis. Terry has failed to meet his burdens under Strickland to show how the venire was unfit or any basis for counsel to attempt to disqualify the potential jurors. The state court's findings are not contrary to, or an unreasonable application of federal law or based on an unreasonable determination of facts.

In a procedurally defaulted portion of Claim H, Terry contends that the trial court erred by permitting demonstrably biased jurors to hear his case. In conducting habeas review, a federal court does not re-examine state-court determinations on state-law questions. McGuire, 502 U.S. at 68. The circuit court's determination that the jurors were not biased is a state-court determination of a state-law question. Va. Code § 8.01-358 (2016); see also Calhoun, 226 Va. at 259, 307 S.E.2d at 898. Therefore, granting federal habeas relief is inappropriate unless the trial error violated fundamental fairness under the Due Process Clause of the Fourteenth Amendment. Brecht, 507 U.S. at 633 (citing Barefoot, 463 U.S. at 887). Terry's claim fails under the strict Kotteakos standard because Terry has not offered any factual support for his allegation that the jurors were biased. The trial court analyzed the voir dire and found the jurors competent under Virginia law and Calhoun; Terry has not offered any evidence to rebut the state court's

26

determination. 28 U.S.C. § 2254 (e)(1) ("The applicant shall have the burden of rebutting the presumption of correctness [of a state court factual determination] by clear and convincing evidence."). Therefore, the court grants the motion to dismiss as to Claim H.

Although Claim I is procedurally defaulted, the court will address the merits of the claim. Terry contends that his Fourteenth Amendment rights were violated when the trial court failed to appoint substitute counsel to advise Terry regarding a waiver of a conflict of interest. However, whether substitute counsel or a waiver is required for a potential conflict of interest in a state court proceeding in Virginia is a matter of state law. See Va. Sup. Ct. R. 1.7 (waiver necessary for concurrent conflict of interest); Va. Sup. Ct. R. 1.9 (waiver required for representation of a client that has interests materially adverse to a former client's interests in the same or a substantially related matter). Federal habeas courts focus on federal issues, and generally do not "reexamine state-court determinations on state-law questions." McGuire, 502 U.S. at 68. Here, the Circuit Court of the City of Danville, following Virginia law, determined that substitute counsel was unnecessary. The claim therefore fails because habeas courts do not allow prisoners to relitigate state issues on collateral review. Brecht, 507 U.S. at 633 (citing Barefoot, 463 U.S. at 887).

Federal habeas relief is available if the trial error violated fundamental fairness. See id. at 633; McGuire, 502 U.S. at 72. Terry has not offered any factual support for his allegations that the trial court's refusal to appoint Terry substitute counsel regarding the waiver issue affected the outcome of the trial; therefore, his claim fails under the Kotteakos standard. The alleged trial error did not have a "substantial and injurious effect or influence in determining the

jury's verdict." Brecht, 507 U.S. at 637. Thus, the court grants the motion to dismiss as to Claim I.[18]

In Claim J, Terry argues that (1) counsel was defective for failing to object to the competency of Christopher Hayes, and (2) Terry's due process rights were violated when counsel failed to object to the competency of a witness for the Commonwealth. In the state habeas proceeding, the Supreme Court of Virginia found that Claim J satisfied neither the "performance" nor the "prejudice" prong of Strickland:

> The record, including the trial transcript, demonstrates that, on direct examination, [Christopher] Hayes testified clearly and unequivocally to sending a text message to [Terry] on the night of Stokes' death inquiring whether [Terry] might sell him some marijuana. Hayes also unwaveringly described his other activities that evening, where he was, and who he was with.
> On cross-examination, counsel questioned Hayes regarding his potentially inconsistent statements to police regarding his familiarity with [Terry]. Hayes attempted to explain by arguing the semantics of what it means to "know" someone. When confronted with his written statement to police, Hayes abruptly claimed he could not "comprehend" due to "short term memory" issues and "ADHD." Although Hayes also stated that he could not read, he nonetheless began reading a portion of his statement to police aloud and then read the whole statement to himself. Based on Hayes' demonstrated ability to answer questions on direct examination and to obfuscate only when confronted with his inconsistent statements, counsel could have reasonably determined seeking to exclude Hayes' testimony in its entirety would have been futile.
> Therefore, [Terry] has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.[19]

---

[18] Terry also claims that the court erred by not following Rule 44 of the Federal Rules of Criminal Procedure, which states that counsel must disclaim potential conflicts to the client and the client must be given the opportunity to express views on the matter at a hearing. However, the Federal Rules of Criminal Procedure do not apply to Virginia state criminal trials. Fed. R. Crim. P. 1(a). Regardless, (1) the advisory notes for Rule 44 establish that a hearing on a potential conflict is required for *joint representation* cases, (2) counsel withdrew from representing Pruitt before an actual conflict occurred, (3) Terry's murder trial was not the same or substantially related to Pruitt's charges, (4) and counsel did not receive confidential information from Pruitt regarding Terry's case. Fed. R. Crim. P. 44 advisory committee's note to 1979 amendment.

[19] Terry cites Cross v. Commonwealth, 195 Va. 62, 77 S.E.2d 447 (1953), as caselaw supporting his claim that Hayes was an incompetent witness. However, Cross discusses children's competency as witnesses:
> There is no specific age at which a child must have arrived at in order to be competent as a witness. A child is competent to testify if it possesses the capacity to observe events, to recollect and communicate them, and has the ability to understand questions and to frame and make intelligent answers, with a consciousness of the duty to speak the truth.

28

<u>Terry</u>, No. 1074591, at 11-12 (ECF No. 10.2). The court agrees with the state habeas court's analysis that Terry has failed to satisfy either test under <u>Strickland</u>. These findings are neither an unreasonable application of federal law nor an unreasonable determination of facts. Therefore, the court grants the respondent's motion to dismiss as to claim J.

In the first portion of Claim K, Terry contends that counsel was ineffective for failing to object to the sufficiency of the chain of custody the Commonwealth established for the cell phone seized from Terry. Terry claims that the defect in the chain of custody was evident from an inconsistency in Detective Whitley's testimony, who testified at Terry's murder trial that he recovered Terry's phone on April 8, 2011, but later testified in Terry's separate trial on related charges that he had seized the phone on April 9, 2011. In the state habeas proceeding, the Supreme Court of Virginia held:

> The record, including the trial transcript, demonstrates that the Commonwealth sufficiently established a chain of custody for [Terry's] cell phone. See <u>Elliot v. Warden of the Sussex I State Prison</u>, 274 Va. 598, 611, 652 S.E.2d 465, 479 (2007). Lieutenant S.A. Eanes testified that he saw Detective Goins, who interviewed [Terry] on April 8, 2011, bring [Terry's] cell phone "to the crime scene," where he gave it to Officer Doyle, who "packaged and marked it." Detective Whitley never testified at [Terry's] trial to seizing [Terry's] phone. Therefore, [Terry] has failed to demonstrated that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

<u>Terry</u>, No. 1074591, at 12-13 (ECF No. 10.2). The court agrees with the state court's analysis. Terry's claim is meritless, and fails to satisfy the two-prong test under <u>Strickland</u>. These findings are not an unreasonable application of federal law or an unreasonable determination of facts.

---

195 Va. at 64, 77 S.E.2d at 449. Hayes may have been an obstinate witness, but he was competent to testify. If anything, Hayes' obfuscations when faced with inconsistent statements led the jury to minimize the value of his testimony against Terry.

In the second portion of Claim K, Terry argues that counsel was ineffective for failing to impeach Detective Whitley's inconsistent testimony regarding who seized Terry's cell phone and when the seizure occurred. Terry claims that Detective Whitley testified inconsistently as to the seizure of Terry's cell phone, but Detective Whitley never testified as to the seizure of the cell phone. Terry also contends that a trial transcript from Pittsylvania County demonstrates that the phone seizure took place on a different day than Detective Whitley stated, resulting in a perjured statement. On habeas review, the Supreme Court of Virginia held:

> The record, including the trial transcript, demonstrates that Detective Whitley did not testify at [Terry's] trial to personally seizing [Terry's] cell phone on April 8. Moreover, impeaching Detective Whitely [sic] on the circumstances surrounding the seizure of [Terry's] cell phone would not have shifted the strength of the evidence against [Terry]. Therefore, [Terry] has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Id. at 13. The court agrees with the Supreme Court of Virginia's analysis that Terry's claim fails under Strickland. These findings are not an unreasonable application of federal law or an unreasonable determination of facts. Therefore, the court grants the motion to dismiss as to Claim K.

30

## V.

For the reasons stated, the court **GRANTS** the motion to dismiss. Claim A, Claim I, and portions of Claims F and H are procedurally barred, and all claims are without merit. An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to Terry and to counsel of record for Respondent. Further, finding that petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(1), a certificate of appealability is **DENIED**.

**ENTER:** This 26 day of January, 2017.

/s/ Michael F. Urbanski

United States District Judge